Case 4:22-cv-02323   Document 50   Filed on 10/27/23 in TXSD   Page 1 of 5

United States District Court
Southern District of Texas
**ENTERED**
October 27, 2023
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| MICHELLE MCMILLAN, § § Plaintiff. § § V. § § JAMES MARQUIN LEQUANDRE, *et al.*, § § § Defendants. § | CIVIL ACTION NO. 4:22-cv-02323 |

## OPINION AND ORDER

In this motor vehicle accident case, Defendant PAM Transport, Inc. ("PAM") asks me to order Plaintiff Michelle McMillan ("McMillan") to submit to mental and physical examinations, arguing that she has placed her physical and mental health squarely at issue. *See* Dkt. 49. PAM has engaged Dr. Howard B. Cotler to conduct a physical examination and Dr. Carla S. Galusha to perform a mental examination.

Federal Rule of Civil Procedure 35 provides that a district court "may order a party whose mental or physical condition . . . is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." FED. R. CIV. P. 35(a)(1). The trial court has the discretion to "specify the time, place, manner, conditions, and scope of the examination." FED. R. CIV. P. 35(a)(2)(B).

McMillan does not object in principle to submitting to two medical examinations, but she does object to the scope of those medical examinations as proposed by PAM. I will address those objections below.

**Dr. Howard B. Cotler**: Dr. Cotler is an orthopedic surgeon. He describes the examination he intends to conduct as follows:

> In doing [an independent medical examination], I need to obtain a history, perform a physical examination, Orthopedic and Neurological exams and review medical records. This is the exact procedure a treating doctor would perform. To obtain a history, I ask the plaintiff to fill out a medical questionnaire and respond to oral

> questions. I will not refer the plaintiff for any diagnostic studies or other evaluations. The plaintiff will not be given a diagnosis or provided with any treatment recommendations. The evaluation will be 1-2 hours in duration, and I will be the only one performing such with a Medical Assistant and a translator's assistance if needed.

Dkt. 49-1. McMillan objects to the scope of this examination on two grounds. First, she complains that one to two hours is unnecessarily long. She asks that the orthopedic examination be limited to 45 minutes. Second, McMillan "objects to requiring her to fill out a questionnaire as that would be requiring her to create or generate documents for Defendants." Dkt. 49 at 2. She requests "that all oral questions be limited to only those which relate directly to Plaintiff's orthopedic injuries and that have not been asked in her deposition." *Id.* Neither of these objections are valid.

In terms of the length of the examination, I am mindful that one purpose of Rule 35 "is to preserve the equal footing of the parties" with respect to the assessment of a party's physical or mental condition. *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 392 (S.D. Tex. 2013) (quotation omitted). Because McMillan's doctors were not limited in the time they had to conduct their medical examinations, I am reluctant to impose time restrictions on Dr. Cotler "for fear that an arbitrary timeline will interfere with the Rule's purpose." *Id.* at 399. Dr. Cotler estimates that his examination of McMillan will last roughly one to two hours. This certainly does not shock the conscience. I have every confidence that Dr. Cotler will conduct the medical examination in the time reasonably necessary to assess McMillan's physical condition and render his expert medical opinion. I will defer to Dr. Cotler's professional judgment concerning the duration of the examination.

Turning to the medical questionnaire issue, Dr. Colter's request to have McMillan complete a medical history form as part of the medical examination is far from surprising. "Courts regularly recognize the need for an independent medical examiner to obtain information through [a] plaintiff's responses to history questionnaires and intake forms and for plaintiff to provide that information

independently and without the assistance of counsel." *Crumedy v. XYZ Ins. Co.*, No. 22-cv-4570, 2023 WL 6293867, at *4 (E.D. La. Sept. 27, 2023) (collecting cases). I am not a doctor, and I am hesitant to tell Dr. Cotler what questions he can or cannot ask as part of his independent medical examination. I am confident that Dr. Cotler will inquire into only those areas that he reasonably believes are necessary for him to render his medical opinion. I am unwilling to require Dr. Colter to limit his questions to only those that have not already been asked at McMillan's deposition. I do not know if Dr. Colter has read the deposition, and I certainly do not want to impose on him the additional time and effort that would be required to do just that.

**Dr. Carla S. Galusha**: Dr. Galusha has been hired to conduct a mental examination of McMillan. The proposed scope of her examination is as follows: "The scope of the mental examination will include assessment of current and prior psychological and cognitive functioning and include a clinical interview, personality, trauma, intellectual assessment and neuropsychological screening. Time to complete the assessment including the testing typically takes about 4 hours." Dkt. 49-2. With respect to Dr. Galusha's proposed examination, McMillan "requests that the examination be limited to four hours in time and that Dr. Galusha be required to provide all testing results, including the raw data underlying such results, to Plaintiff within seven (7) days of the examination." Dkt. 49 at 2.

As I explained above, I am unwilling to set a firm time limit on the length of a medical examination conducted under Rule 35. Dr. Galusha anticipates that her examination of McMillan will take approximately four hours, and I have every confidence she will conduct the examination as expeditiously as possible.

Now let me address McMillan's request that she receive all of Dr. Galusha's testing results, including the raw data, within seven days of the examination. Rule 35 simply does not require the production of such documentation. Rule 35 provides that "[t]he party who moved for the examination must, on request, deliver

to the requester a copy of the examiner's report." FED. R. CIV. P. 35(b)(1). "The examiner's report must be in writing and must set out in detail the examiner's findings, including diagnoses, conclusions, and the results of any tests." FED. R. CIV. P. 35(b)(2). "Nothing in this rule, including the committee notes, specifies that the examiner must produce anything other than his final report in accordance with Rule 35(b)(2) and 'like reports of all earlier examinations of the same condition.'" *Bryant v. Dillon Real Est. Co.*, No. 18-cv-00479, 2019 WL 3935174, at *2 (D. Colo. Aug. 20, 2019) (quoting FED. R. CIV. P. 35(b)(1)).

To set aside any possible confusion, let me be clear: I am not suggesting that McMillan can never access the testing results performed by Dr. Galusha. I am simply observing that Rule 35 does not mandate such a disclosure. *See Botkin v. Tokio Marine & Nichido Fire Ins. Co.*, No. 12-cv-95, 2013 WL 12384663, at *3 (E.D. Ky. Apr. 9, 2013) ("Rule [35] does not provide for the production of notes and/or test data developed in connection with the Rule 35 examination."). In the event PAM designates Dr. Galusha as a testifying expert witness, she will obviously need to comply with the disclosure obligations that all experts face. And if Dr. Galusha is not designated as an expert witness, McMillan's counsel is certainly free to issue discovery requests aimed at obtaining a litany of documentation relating to Dr. Galusha's independent medical examination. Such documents might include notes, data, questionnaires, standardized test questions and answers, payment records, examination recordings, and correspondence with PAM's counsel. Now, however, is not the time to require such disclosure under the auspices of Rule 35.

## CONCLUSION

Rule 35 provides judges with considerable leeway to specify the time, place, manner, conditions, and scope of an independent medical examination. I have discussed my views on the parameters of the medical examinations to be conducted by Drs. Colter and Galusha. I would appreciate if the parties would work together to set up a convenient time and place for those examinations. In the

unlikely event the parties are unable to agree, let me know and I will resolve the stalemate.

SIGNED this 27th day of October 2023.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE